IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA

v.

LEOCADIO VALLARTA ISIP, JR.,

Defendant

Criminal Number: 19-64-RGA

MEMORANDUM ORDER

Defendant filed a motion to suppress (D.I. 45) to which the Government responded (D.I. 46) and Defendant replied. (D.I. 49). Thereafter, I held an evidentiary hearing. (D.I. 50). At the conclusion of the hearing, I requested further submissions, which were duly submitted. (D.I. 58, 62).

The issue raised by the motion to suppress is fairly narrow. Defendant was approached at his place of employment, taken by law enforcement to a nearby police station, where, after a waiver of his *Miranda* rights, he gave a lengthy interview. The action at the police station was video-recorded, and it is uncontested that the waiver of *Miranda* rights and subsequent interview at the police station complied with Defendant's Fifth and Sixth Amendment rights when considered in isolation. Defendant's motion is based on the theory that his rights were violated before he got to the police station, and that the earlier violation tainted the otherwise lawful interrogation at the police station. (D.I. 45 at 14-16, relying on *Missouri v. Seibert*, 542 U.S. 600, 604 (2004) ("midstream recitation of warnings after interrogation and unwarned confession could not effectively comply with *Miranda*'s constitutional requirement . . . [making the

1

statement] inadmissible.")). As he stated in his motion, "The questioning [at Perdue] lasted approximately an hour and no *Miranda* warnings were given or waived." (D.I. 45 at 2).

I took the matter under advisement at the conclusion of the hearing because there was conflicting testimony between the law enforcement agents (principally, the case agent, SA Thomas) and Defendant, and Defendant bolstered his testimony with excerpts from the videotape that he argued supported his version of events. I did not think that I could evaluate the videotape excerpts without giving the Government the opportunity to put them in context, which would have been quite difficult with a two-hour videotape for which there was no transcript.

Having now reviewed all of the evidence, and, in particular, the Government's submission putting the excerpts into context, I conclude that where Agent Thomas and Defendant differed in their testimony, the testimony of Agent Thomas is more credible, and I accept it. I do not see the excerpted statements as being only explainable by there having been previous interrogation. I also note that Agent Thomas and the other two law enforcement officers were not always consistent, but I do not find that disconcerting. In my experience, which I think accords with common sense, a police officer who is accompanying out-of-jurisdiction law enforcement will often not pay great attention to what they are doing because the officer's job is as a liaison, not as an investigator. I would generally expect more attention from an accompanying agent from the same investigative agency, but in this case the accompanying agent had the functionally distinct task of being the computer forensic component of the investigative team.

In essence, the relevant facts are that Agent Thomas and others met Defendant no earlier than about 5:05 p.m. on April 17, 2018, at a Perdue Farms meeting room. (Tr. at 53). There

were introductions, display of credentials, an explanation of why law enforcement was there, a *Miranda* recitation[1] (but without any request that Defendant then and there waive his *Miranda* rights), the group going out to the large parking lot to look for Defendant's vehicle, a search of the vehicle with a search warrant (D.I. 45 at 2; Tr. at 14-15), transport of Defendant and law enforcement the relatively short distance to the Milford Police Station, and their arrival there at 5:30 p.m. This is consistent with the Government's version of events, not Defendant's. The amount of time that the Perdue events could have taken is constrained by the Milford Police dispatch records (GX-1) establishing when Defendant could first have met law enforcement and when Defendant arrived at the police station. There was not enough time for Defendant's version of events to have happened. He was not interrogated before his arrival at the police station.

Thus, there was no violation of Defendant's rights while he was at Perdue and on his way to the police station, and thus there is no taint that would impact Defendant's otherwise valid waiver of his rights at the police station.

The motion to suppress (D.I. 45) is DENIED.

Entered this 30 day of January, 2020.

*[signature]*
United States District Judge

---

[1] The exact content of the *Miranda* recitation was not stated. Defendant's position was not that it was insufficient, but that it did not occur at all. The fact that Agent Thomas referred to the previous *Miranda* warnings during the videotaped interview with no contradiction by Defendant (Def. Ex. 1 at 10:45 - 10:50) convinces me that she did in fact give them earlier.

3