IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 19-64-RGA |
| LEOCADIO VALLARTA ISIP, JR., | |
| Defendant. | |

MEMORANDUM

Before me is Defendant Leocadio Vallarta Isip, Jr.'s Motion to Withdraw Guilty Plea. (D.I. 110). I have reviewed the parties' submissions. (D.I. 110, 124, 131, 134). I have also considered the evidence presented by both parties at the evidentiary hearing held on February 24 and 25, 2022. (D.I. 145, 146). For the reasons stated below, Defendant's motion is denied.

**I. BACKGROUND**

On May 7, 2019, a grand jury returned an indictment charging Defendant with (1) Receipt and Attempted Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2), 2252(b)(1), and 2256(2)(A); (2) Travel with Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b); and (3) Engaging in Illicit Sexual Conduct in Foreign Places, in violation of 18 U.S.C. § 2423(c). (D.I. 26). On February 10, 2020, Defendant pleaded guilty to Count One, receipt of child pornography. (D.I. 71, 73, 85). His plea was entered pursuant to a plea agreement Defendant had signed on February 7, 2020 and amended Attachment B which Defendant signed at the hearing on February 10, 2020. (D.I. 71, 73).

1

On October 7, 2020, Defendant filed a motion to continue the sentencing, raising for the first time that he wanted to withdraw his guilty plea, which he had first brought up with counsel five months after the guilty plea. (D.I. 86 ¶ 19; D.I. 145 at 18:24–19:4). In due course, Defendant filed a motion seeking to withdraw his guilty plea, contending that he is innocent and that he did not make his plea knowingly, intelligently, and voluntarily. (*See* D.I. 89). After a change in representation, and delay concerning new counsel's representation, counsel filed a new motion to withdraw his guilty plea. (*See* D.I. 110). After briefing and the evidentiary hearing, I now decide the motion.

## II. LEGAL STANDARD

A defendant may withdraw a guilty plea if he "can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). The defendant bears the "substantial" burden of demonstrating a "fair and just" reason. *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). A court must consider three factors in determining whether a "fair and just" reason exists: "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Id.* No one factor is "mandatory such that failure to establish one will necessarily dictate rejection of the motion." *United States v. Wilder*, 134 F. App'x 527, 528 (3d Cir. 2005).

## III. DISCUSSION

### A. Assertion of Innocence

"To satisfy the first factor, a defendant must make a credible showing of innocence, supported by a factual record." *United States v. Lee*, 664 F. App'x 126, 128 (3d Cir. 2016).

2

"Bald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea." *Jones*, 336 F.3d at 252. A defendant must offer "credible facts" in support of his assertion. *Id.* at 253. In addition to asserting his innocence, a defendant must "give sufficient reasons to explain why contradictory positions were taken before the district court." *United States v. Brown*, 250 F.3d 811, 818 (3d Cir. 2001) (internal citation omitted).

Defendant's guilty plea was originally predicated on the fact that Defendant knowingly received a sexually explicit picture from the victim via Facebook Messenger. (*See* D.I. 73). At the Rule 11 change of plea hearing, however, Defendant questioned whether he knowingly received the picture because he did not open it. (D.I. 85 at 40:2–22). After taking a thirty-minute recess to review the evidence, the parties amended Attachment B (the statement of facts establishing guilt) to instead provide that Defendant knowingly received a sexually explicit video. (*Id.* at 43, 44:9–25). Defendant signed amended Attachment B. (D.I. 73; D.I. 85 at 46:22–24). Defendant's lawyer, Mr. Huff, told the Court, "[I]t was actually in [sic] my client's suggestion that we change this language to cover a video that was sent as opposed to images." (D.I. 85 at 45:13–15). Defendant confirmed that he received and opened the video, and that he was guilty. (*Id.* at 45:16–25, 47:4–7).

Defendant now contends, "[H]e never downloaded, opened, viewed or played the video sent by the victim on November 14, 2015." (D.I. 110 at 8). He argues that at the hearing, "he was unsure whether or not he had actually viewed the video. Since the guilty plea, however, he now remembers that he had not viewed the video on November 14, 2015." (*Id.*). Defendant asserts that he instead knew the contents of the video because (1) he received the video from Christopher Nalasa in May 2016 (*id.*; D.I. 145 at 22:20–23:10 (testimony of Mr. Huff); D.I. 146

3

at 306:20–307:11 (testimony of Defendant)), and (2) the victim told him the contents of the video she was sending in a telephone conversation. (D.I. 110 at 9–10).

Defendant has not produced any credible evidence to support his current claims. *See Brown*, 250 F.3d at 818 ("Assertions of innocence must be buttressed by facts in the record that support a claimed defense." (citation omitted)). Instead, the evidence directly contradicts Defendant's assertion of innocence. The victim sent Defendant the sexually explicit video through Facebook Messenger on November 14, 2015.[1] After receiving this video, Defendant messaged the victim and mentioned specific details from the video indicating that he had opened and watched the video. For example, Defendant told the victim to use a smaller bottle and asked her why she was wearing a shirt in the video. (*See* D.I. 145 at 205:11–208:2 (testimony of Special Agent Downey)). These messages overwhelmingly support a finding that Defendant knowingly received this video on November 14, 2015.[2]

Defendant's assertions of innocence also contradict his statements at the Rule 11 hearing. After the parties amended Attachment B, Defendant raised no objection to the Government's recitation of the facts, and he admitted to knowingly receiving and opening the video. (D.I. 85 at 44:9–46:24). He did not make any indication that he was "unsure" about whether he opened

---

[1] This video was recovered from Defendant's phone during the forensic examination. (D.I. 145 at 142:6–147:10, 153:25–154:18, 182:16–183:11, 235:3–6 (testimony of Special Agent Downey); *see also* Exs. 6AA & 6BB).
[2] Although the evidence here shows that Defendant opened and watched the video, I do note that Defendant can still be guilty of "knowingly receiving" child pornography without a showing that he opened the file containing the child pornography. Even if Defendant only knew the contents of the video because of what the victim told him during a phone conversation, Defendant still knowingly received child pornography.

4

the video.[3] Defendant fails to credibly "explain why his position has changed so markedly" since the hearing. *Jones*, 336 F.3d at 253. Thus, I conclude that Defendant has not met his burden to make a credible showing of innocence.

### B. Strength of Reasons for Withdrawal

Turning to the second factor, Defendant raises several arguments as to why his plea was not made knowingly, intelligently, and voluntarily. He first argues that he did not fully understand the terms of the plea agreement, as shown by his confusion at the Rule 11 hearing regarding fines, restitution, forfeiture, supervised release, the mandatory minimum sentence, and the sentencing guidelines. (D.I. 110 at 10–12). Defendant asked several questions at the hearing, and the Court provided an explanation for each question. (*See* D.I. 85 at 13–17, 19–30). The Court also walked Defendant through the plea agreement, asking at each step whether Defendant understood. (*Id.* at 18–32). Defendant confirmed each time that he understood. (*Id.*). Thus, I conclude that Defendant understood all the terms of the plea agreement.

Defendant also argues that he did not fully understand the charge he was pleading guilty to because he did not understand the meaning of "knowingly received." (D.I. 110 at 10). Defendant did express confusion as to the meaning of "knowingly received" before the parties amended Attachment B. (*See, e.g.*, D.I. 85 at 32:24–35:18, 40:2–42:22). He was not sure that he "knowingly received" the sexually explicit picture because he never opened it. (*Id.* at 40:2–13). This confusion is why the parties requested the thirty-minute recess to amend Attachment B. (*Id.* at 43). In fact, Defendant himself proposed changing the factual basis of the plea to his

---

[3] The lack of protest stands in stark contrast with all the other detailed concerns Defendant had, including whether the receipt of the sexually explicit picture (as opposed to the video) was "knowing."

5

receipt of the video. (*Id.* at 45:13–15). After the recess and the amendments to Attachment B, Defendant admitted to opening the video, and expressed no further confusion regarding "knowingly received." (*Id.* at 45:16–47:7). Thus, I conclude that a plain reading of the hearing transcript shows that Defendant sufficiently understood what "knowingly received" meant.

Defendant also contends that he did not have a clear understanding of the plea agreement due to the "numerous changes" made to Attachment B. (D.I. 110 at 15). The parties only made limited changes to Attachment B. They clarified the date of receipt and replaced all references to the picture with references to the video. (D.I. 73). Defendant suggested changing the basis of the plea to his receipt of the video, so he clearly understood the scope of the changes made to Attachment B.

Defendant argues that he was "badgered" into pleading guilty by AUSA Robinson, who repeatedly approached Defendant and his attorney during the recess. (D.I. 110 at 9; D.I. 146 at 330:13–18 (testimony of Defendant)). This assertion is not supported by the record. Instead, the record shows that Mr. Robinson approached the defense table to work with Defendant's attorney to amend Attachment B to include facts that Defendant would unreservedly admit to during the guilty plea. (D.I. 85 at 43:17–18; D.I. 145 at 25:10–15, 55:8–21, 56:19–25 (testimony of Mr. Huff)).

Defendant also appears to contend that he did not have a sufficient understanding of the plea agreement because English is not his native language. (D.I. 110 at 19). I find that Defendant's English was more than sufficient to understand his plea.[4]

---

[4] Before the guilty plea, I had seen Defendant testify in English at the suppression hearing. (D.I. 67). I have also seen him speak at various hearings where he wanted to terminate his counsel's representation. He has no difficulty speaking and understanding English.

6

At the beginning of the plea hearing, Defendant stated that he spoke and understood English. (D.I. 85 at 4–5). Although Defendant warned the Court that he might have trouble understanding if anyone spoke too fast, a full reading of the hearing transcript shows that Defendant did not have any difficulties understanding the proceedings. In fact, I contemporaneously found, "[H]e's very knowledgeable about what the evidence is in the case and asks very subtle questions about the evidence." (*Id.* at 47:11–13). I do not think Defendant would have been able to ask such detailed questions about the evidence if he could not sufficiently speak and understand English.

A review of the complete transcript of the plea colloquy confirms that Defendant made a knowing, intelligent, and voluntary plea.

In his next set of arguments, Defendant asserts that his former attorney Mr. Huff provided ineffective assistance of counsel. "A court will permit a defendant to withdraw a guilty plea based on ineffective assistance of counsel only if (1) the defendant shows that his attorney's advice was under all the circumstances unreasonable under prevailing professional norms, and (2) the defendant shows that he suffered 'sufficient prejudice' from his counsel's errors." *Jones*, 336 F.3d at 253–54 (internal citations omitted). Defendant generally argues that Mr. Huff's "acquiescence" to the plea agreement was unreasonable. (D.I. 110 at 16). But Defendant does not explain how Mr. Huff's acquiescence to a knowing and voluntary plea was "under all the circumstances unreasonable under prevailing professional norms."[5] Defendant's argument is not a valid basis for a claim of ineffective assistance of counsel.

---

[5] Lurking in the background to the plea was the possibility that the United States would charge Defendant with a fifteen-year minimum mandatory "production charge" if he did not take the offered plea. (D.I. 146 at 284:19–25 (issue raised when Defendant was represented by the

7

For the first time, in Defendant's Reply, Defendant asserts that Mr. Huff was ineffective because he failed to file any motion to dismiss the indictment, which had at least three defects. (D.I. 131).

First, Defendant argues that Count One—receipt of child pornography—is barred by the statute of limitations. Defendant is incorrect.[6]

There is no statute of limitations for receipt of child pornography under § 2252, which is found in Chapter 110 of the United States Code. Pursuant to 18 U.S.C. § 3299, "an indictment may be found or an information instituted at any time without limitation . . . for any felony under chapter . . . 110 (except for section 2257 and 2257A) . . . ." The cases cited by Defendant which applied the five-year statute of limitations to child pornography offenses are inapposite. Those cases involved conduct that occurred before Congress promulgated § 3299 in July 2006. *See, e.g., United States v. Coutentos*, 651 F.3d 809, 818 (8th Cir. 2011); *United States v. Burkhart*, 602 F.3d 1202, 1206 (10th Cir. 2010); *United States v. Welton*, 2009 WL 4507744, at *16 (C.D. Cal. Nov. 30, 2009). The conduct here occurred between 2014 and 2016, so there is no question that § 3299 applies. Accordingly, Mr. Huff was not ineffective for failing to raise the inapplicable statute of limitations defense.

Second, Defendant argues that Count One of the indictment is duplicitous. "Duplicity is the improper combining of separate offenses into a single count." *United States v. Steiner*, 847

---

Assistant Federal Public Defender, Janet Bateman); D.I. 145 at 48:22–49:8 (issue discussed when Defendant was represented by Mr. Huff)).

[6] The indictment was returned May 7, 2019. The time frame of the receipt of child pornography was April 28, 2014 to September 25, 2016. All but the first ten days were within the purported five-year statute of limitations. The conduct to which he pled guilty, on November 14, 2015, was well within even a five-year statute of limitations.

F.3d 103, 114 (3d Cir. 2017). Count One charges Defendant with knowingly receiving child pornography "[f]rom on or about April 28, 2014, through on or about September 25, 2016." (D.I. 26 at 2). Defendant argues that Count One improperly charges many distinct crimes, as each individual receipt of child pornography is a separate offense. (D.I. 131 at 2–3). The Government responds that the indictment is not duplicitous because Defendant was engaged in a "continuous course of conduct" with respect to his receipt of child pornography. (D.I. 134 at 3–7 (citing *United States v. Root*, 585 F.3d 145 (3d Cir. 2009))).

While I think Defendant's duplicity argument probably has some merit as an academic matter, I am confident that it was not unreasonable under prevailing professional norms not to file a motion to dismiss for duplicity. Most defendants and defense counsel would prefer to face less rather than more charges, whether the charges are for drugs or for child pornography. Further, Defendant has failed to show that he suffered any prejudice from Mr. Huff's failure to notice the duplicity issue. Even if Defendant successfully moved to dismiss the indictment on duplicity grounds, there is no statute of limitations, so the Government could have simply separated the charges and reindicted Defendant. The reindictment would instead subject Defendant to more charges for receipt of child pornography. *See, e.g., United States v. Gunselman*, 643 F. App'x 348, 353 (5th Cir. 2016) (per curiam) (concluding that the defendant "could not have suffered any prejudice from his attorney's failure to spot the duplicity" because "the government could simply have divided up the duplicitous counts and reindicted, thus subjecting [the defendant] to *more* charges"). Thus, Defendant has failed to show ineffective assistance of counsel based on duplicity grounds.

Third, Defendant argues that Counts Two and Three of the indictment are defective. Count Two provides, "From on or about May 14, 2014, through on or about June 24, 2014, [Defendant] knowingly travelled in foreign commerce . . . to the Philippines, for the purpose of engaging in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with Minor A, a girl less than 18 years of age, in violation of Title 18, United States Code, Section 2423(b)." (D.I. 26 at 2–3). Similarly, Count Three provides, "From on or about May 14, 2014, through on or about June 24, 2014, [Defendant] knowingly travelled in foreign commerce . . . to the Philippines, and engaged in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with Minor A, a girl less than 18 years of age, in violation of Title 18, United States Code, Section 2423(c)." (*Id.* at 3).

Section 2423 defines "illicit sexual conduct" as "a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A." 18 U.S.C. § 2423(f). Section 2243 (in chapter 109A) prohibits engaging in a sexual act with a person under 16 years old. *Id.* § 2243(a). If the victim is between 16 and 18 years old, a defendant can only be charged under chapter 109A if the defendant used force. *See, e.g., id.* §§ 2241, 2242; *United States v. Murphy*, 942 F.3d 73, 81 (2d Cir. 2019). Defendant argues that because Counts Two and Three only allege that the victim was under 18 years old, rather than under 16 years old, they fail to charge an offense. (D.I. 131 at 3–4).

The Government responds that the indictment tracks the language of the statute, which defines illicit sexual conduct as a sexual act "with a person under 18 years of age." (D.I. 134 at 8). The Government further argues that Defendant's conduct falls within § 2243(a) because the victim was 15 years old when Defendant travelled to the Philippines to have sex with her. (*Id.*).

10

An indictment is generally deemed sufficient if it: "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (quoting *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007)). "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *Id.* (quoting *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989)).

To establish a violation of § 2423(b), the Government must show: (1) Defendant travelled in foreign commerce; and (2) he intended to engage in "illicit sexual conduct," i.e., a sexual act with (a) a victim under 18 years old (b) in violation of chapter 109A. Similarly, to establish a violation of § 2423(c), the Government must show: (1) Defendant travelled in foreign commerce; and (2) he engaged in "illicit sexual conduct," i.e., a sexual act with (a) a victim under 18 years old (b) in violation of chapter 109A.

Counts Two and Three track the language of § 2423(b) and (c), respectively. (*See* D.I. 26 at 2–3). Although these counts do not include the phrase "in violation of chapter 109A," they do refer to the definitional section of the statute, § 2423(f), which includes this requirement. Thus, the indictment contains each element of the charged offenses and sufficiently apprises Defendant of what he must be prepared to meet. The indictment does not need to allege that the victim was under 16 years old to adequately charge an offense. Counts Two and Three are sufficient. *See, e.g., United States v. Kalkounos*, 2006 WL 2076587, at *1–*3 (E.D. Wis. July

11

24, 2006) (holding that an indictment was sufficient where it provided, "[Defendant] traveled in interstate commerce from Illinois to Milwaukee, Wisconsin, for the purpose of engaging in any sexual act, as defined by Title 18, Unite[d] States Code, Section 2246(2), with a person under 18 years of age, and which conduct would be illegal under federal law. All in violation of Title 18, United States Code, Section 2423(b).").  Accordingly, Defendant's attorney was not ineffective for failing to move to dismiss the indictment on this ground.[7]

### C. Prejudice to the Government

"[T]he Government need not show such prejudice when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea." *Jones*, 336 F.3d at 255. Because Defendant has failed to make a credible showing of innocence and has failed to offer strong reasons for withdrawing his plea, the Court does not need to consider the third factor.[8]

## IV. CONCLUSION

Thus, I conclude that Defendant has failed to meet his burden of demonstrating a fair and just reason for withdrawing his guilty plea.  Defendant's motion to withdraw his guilty plea is

---

[7] Indeed, it would also be hard to say that there was any prejudice to Defendant even had counsel successfully moved for dismissal on this ground.  Defendant did not plead guilty to either Counts Two or Three.  And, the Government could surely have obtained another indictment with the age of the victim specified had that been required.

[8] If it were important to consider it, I would find the Government has not shown sufficient prejudice.  The only argument of the Government was that they had lost touch with the victim after the guilty plea.  It is at best speculative whether further efforts to contact the victim would have been fruitless, or what the victim's wishes would have been about further assistance in the prosecution were the guilty plea to be withdrawn.

12

denied.

       An appropriate order will issue.

Entered this 14th day of April, 2022.

/s/ Richard G. Andrews
United States District Judge