IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent/Plaintiff, | ) | |
| | ) | Criminal Action No. 19-64-RGA |
| v. | ) | Civil Action No. 23-1349-RGA |
| | ) | |
| LEOCADIO VALLARTA ISIP, JR., | ) | |
| | ) | |
| Movant/Defendant. | ) | |

_____

Leocadio Vallarta Isip, Jr. *Pro se* Movant.

Alexander P. Ibrahim, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware.  Attorney for Respondent.

_____

**MEMORANDUM OPINION**

August 27, 2025
Wilmington, Delaware

ANDREWS, UNITED STATES DISTRICT JUDGE:

Movant Leocadio Vallarta Isip, Jr. filed a *pro se* Motion to Vacate, Set Aside, or Correct

Sentence Pursuant to 28 U.S.C. § 2255 on November 20, 2023. (D.I. 186).  It was timely.

## I.    PROCEDURAL BACKGROUND

Law enforcement obtained a search warrant for Movant's home, person, and vehicle on

July 13, 2018. (D.I. 201-1)  Movant was arrested on July 17, 2018, and his car was searched that

day. (D.I. 67 at 52)  He was charged by criminal complaint on July 18, 2018. (D.I. 27)  He

appeared before a magistrate judge on July 18, 2018.  He was appointed the Federal Public

Defender as counsel. (D.I. 3)  After various continuances, a federal grand jury indicted him on

May 7, 2019. (D.I. 25)  The indictment had three counts, described as "Receipt and Attempted

Receipt of Child Pornography," "Travel with Intent to Engage in Illicit Sexual Conduct," and

"Engaging in Illicit Sexual Conduct in Foreign Places." (*Id.*)

Movant wrote to the Assistant FPD requesting that she file a motion to withdraw. (D.I. 34

at 2)  She promptly followed up with a motion to withdraw. (*Id.*)  I held a hearing, after which I

granted the motion to withdraw. (D.I. 36)  I scheduled a status conference (D.I. 37) and appointed

Michael Huff to act as Movant's counsel.

The status conference was continued and eventually held on September 4, 2019. (D.I. 42;

D.I. 43)  I set a schedule that included a trial on March 2, 2020. (D.I. 44)  Pursuant to that schedule,

Movant filed a motion to dismiss on Speedy Trial grounds and to suppress evidence. (D.I. 45)  I

denied the motion to dismiss on Speedy Trial grounds. (D.I. 53)  I held an evidentiary hearing on

the motion to suppress on January 3, 2020. (D.I. 56)  Three law enforcement officers and Movant

testified at the hearing. (*Id.*; D.I. 67)

On January 29, 2020, the parties advised me they were "exploring a non-trial resolution."

(D.I. 64)  They asked for the trial to be continued.  The next day, I denied the motion to suppress

2

in a written order. (D.I. 66)  The day after that, I denied the request to continue the trial.  (D.I. 68)

On February 7, 2020, the parties advised Movant "intends to enter a plea of guilty."  (D.I. 70)

A change of plea hearing was set for February 10, 2020.  On that date, Movant entered a

guilty plea to the first count of the indictment, described in the plea agreement as "Receipt of Child

Pornography, in violation of Title 18, United States Code, Sections 2252(a)(2), 2252(b)(1), and

2256(2)(A)."  (D.I. 71; D.I. 85)  At the plea hearing, the parties submitted "Attachment B," a

written description of the factual basis of the guilty plea.  (D.I. 73)

Sentencing was scheduled for May 29, 2020.  (D.I. 74)  It was then continued twice, mainly

because of the COVID-19 outbreak.  (D.I. 76; D.I. 79)  In between the two continuances, the draft

presentence report was disclosed to the parties.  (D.I. 78)  It proposed that Movant's sentencing

guideline imprisonment range was 210-240 months.[1]  (*Id.* at 22)  Sentencing was continued a third

time because Movant wanted his counsel to file a motion to withdraw his guilty plea.  (D.I. 86 at

3; D.I. 87)

On February 26, 2021, Movant (through counsel) filed a motion to withdraw his guilty

plea.  (D.I. 89)  On March 9, 2021, Movant filed a letter stating Attorney Huff's services were "not

needed and necessary," asking that the filed motion to withdraw be withdrawn, and stating that

Movant would file his own motion to withdraw guilty plea.  (D.I. 91)  On March 26, 2021, during

a hearing, I terminated Attorney Huff's representation, and I directed that new counsel be

appointed.  (D.I. 97)

---

[1]    The PSR literally said, "210 months to 262 months."  The statutory maximum for the
offense, however, was 240 months.

I appointed Peter Levin to represent Movant. I granted Movant more time so that Attorney Levin could review "tens of thousands of pages of [discovery]" and prepare a new motion to withdraw guilty plea. (D.I. 104)

On August 11, 2021, Movant (through counsel) filed the new motion to withdraw guilty plea. (D.I. 110) Shortly thereafter, Movant requested that Attorney Levin's representation be terminated and that Movant be allowed to file his own motion to withdraw guilty plea. (D.I. 115) At a hearing on October 19, 2021, I found that there was not good cause to terminate Mr. Levin's representation, and I did not terminate his representation. (D.I. 135 at 5-6, 8, 10)

I held a two-day evidentiary hearing on the motion to withdraw guilty plea on February 24-25, 2022. (D.I. 145; D.I. 146) On April 14, 2022, I denied the motion to withdraw guilty plea. (D.I. 147; D.I. 148)

I set sentencing for July 28, 2022. (D.I. 149) The final presentence report recommended a guideline sentencing of 240 months of imprisonment.[2] (D.I. 157 at 23) At the sentencing hearing, however, I terminated Attorney Levin's representation and advised Movant that the new lawyer was going to be the last lawyer I would appoint him. (D.I. 184 at 49-52) I appointed Dennis Caglia to represent Movant. (D.I. 163) The final revised presentence report was filed. (D.I. 173) It recommended a sentencing guideline imprisonment range of 235-240 months. (*Id.* at 23) Sentencing took place on November 10, 2022. (D.I. 183) I determined the sentencing guideline range to be 235-240 months (D.I. 183 at 78), but I varied downward to a sentence of ten years. (*Id.* at 85-86)

---

[2]    The PSR calculated the guidelines range as 292-365 months, but, again, because of the statutory maximum, the sentence could not be more than 240 months. (D.I. 157 at 23)

Movant appealed. (D.I. 179) The Court of Appeals affirmed. *United States v. Isip*, C.A. No. 22-3210, Entry 45, 2023 WL 5696109 (3d Cir. Sept. 5, 2023). The only issue raised on appeal concerned the sentencing. Although Movant's plea agreement (D.I. 71, ¶ 10) permitted Movant to appeal from my denial of his motion to dismiss on Speedy Trial grounds (D.I. 53) and from my denial of his motion to suppress (D.I. 66), those issues were not raised on appeal. The mandate of the Court of Appeals issued on September 27, 2023 (D.I. 185), and the § 2255 Motion followed less than two months later.

Movant's § 2255 Motion states that he is raising fifteen grounds as the basis for relief. (D.I. 186 at 3-9) The Government responded to the Motion. (D.I. 201) Movant filed a 54-page Memorandum in support of his Motion. (D.I. 202) I asked the Government to respond to the "*Brady* violation" allegations.[3] (D.I. 204) The Government responded. (D.I. 206) Movant filed an 18-page reply. (D.I. 209) The three attorneys, Michael Huff, Peter Levin, and Dennis Caglia, filed statements under oath replying to the allegations of ineffective assistance of counsel ("IAC"). (D.I. 205; D.I. 207; D.I. 208)

I summarize the fifteen grounds for relief described in the § 2255 Motion (D.I. 186): 1. IAC by Attorney Caglia for failures to pursue investigation and argument about evidence "not on the record" and "on the record." (D.I. 186 at 3) 2. Lack of probable cause relating to Movant's arrest and related searches. 3. The Government fabricated evidence in relation to the suppression hearing. 4. The search and seizure warrant was invalid. 5. The Government gave false evidence in relation to Movant's detention, arrest, and imprisonment. 6. The Government's filing of the "an unlawful and illegal" criminal complaint ("Exhibit 4"). 7. The government did not Mirandize

---

[3] By *Brady*, I am referring to the obligations first set forth in *Brady v. Maryland*, 373 U.S. 83 (1963).

Movant but held him "in a custodial interrogation setting for almost two hours." 8. Grounds 2, 3, 4, 5, 6, and 7 as a group. 9. The language of the indictment did not match the language of the statute on which it was based. 10. The Government suppressed evidence that would have shown evidence in connection with the suppression hearing was tampered with. 11. The Government suppressed evidence that the child pornography which was the basis for his guilty plea was sent to him, not by the victim, but by the victim's boyfriend. 12. The Government committed *Brady* violations. 13. There was a fundamental miscarriage of justice because he is factually and legally innocent. 14. Prosecutorial misconduct based on grounds 2 to 13. 15. Fraud on the court based on grounds 2-14. Movant does not allege any error regarding the procedural aspects of his guilty plea.

Movant's Memorandum in support of his Motion essentially analyzes the fifteen listed arguments as three main arguments. One, the evidence obtained from him on April 17, 2018 was illegally seized and should have been suppressed. (D.I. 202 at 2-10, 14-16, 22-23, 24-28, 37-38, 43) Two, the Government committed *Brady* violations, principally by not turning over evidence that Mr. Nalasa, not Movant's child victim, sent Movant the child pornography that was the basis for his guilty plea (*Id.* at 10-14, 19-21), and that the Government did not turn over evidence that would have allowed him to win his suppression hearing (*Id.* at 17-19, 32, 34-35). Three, he is actually innocent of the charge to which he pleaded guilty. (*Id.* at 45) In addition to the main arguments, Movant states the indictment was defective (*Id.* at 45-47) and argues that his lawyers provided IAC (*Id.* at 48-53). In his Memorandum, Movant again does not make any claims regarding the procedural aspects of his guilty plea, but only alleges that his current claims undermine confidence in his plea and affected the "proceedings" in his case, including the motion to withdraw his guilty plea. (D.I. 202 at 2, 7, 35, 40, 52; D.I. 209 at 10, 11, 17)

## II.    RELEVANT LEGAL PRINCIPLES

Pursuant to § 2255, a federal prisoner serving a sentence imposed by a district court may move the sentencing court to vacate, set aside, or correct a sentence claiming that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  28 U.S.C. § 2255(a).  As a collateral challenge, a § 2255 motion "is reviewed much less favorably than a direct appeal of the sentence."  *See United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)).  "Indeed, relief under § 2255 is available only when the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and ... present[s] exceptional circumstances where the need for the remedy afforded by the writ ... is apparent."  *See id.* (internal quotation marks omitted) (citing *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962))).  Vague and conclusory allegations are insufficient to entitle a movant to relief under § 2255. *See United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000); *Walker v. United States*, 422 F.2d 374, 375 (3d Cir. 1970).  A § 2255 motion may be dismissed without a hearing if "(1) the [movant's] allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)).

A claim that was not raised on direct appeal before being raised in a § 2255 motion is procedurally defaulted unless the movant can show cause and actual prejudice or that he is actually innocent.  *See Bousley v. United States*, 523 U.S. 614, 622-23 (1998).  To establish cause for a default, a movant must demonstrate that "some objective factor external to the defense impeded

counsel's efforts to raise the claim." *United States v. Essig*, 10 F. 3d 968, 979 (3d Cir. 1993), *abrogated on other grounds as explained in United States v. Peppers*, 482 F. App'x 702, 704 n.5 (3d Cir. 2012). To establish prejudice, a movant must show "that the errors at [his] trial ... worked to [his] actual and substantial disadvantage, infecting [his] entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 179. If the movant fails to demonstrate cause, a court is not required to determine if the movant was prejudiced by the default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Actual innocence means "it is more likely than not that no reasonable juror would have convicted him." *Id.* at 623.

When a defendant has pleaded guilty, the potential claims that can be raised in a § 2255 motion are limited. "Courts have long understood a guilty plea to be 'a confession of all the facts charged in the indictment, and also of the evil intent imputed to the defendant.'" *United States v. Porter*, 933 F.3d 226, 229 (3d Cir. 2019) (citing *Class v. United States*, 583 U.S. 174, 180 (quoting *Commonwealth v. Hinds*, 101 Mass. 209, 210 (1869))). It is firmly established that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* When a conviction obtained through a guilty plea is challenged, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. at 563, 569 (2018).

IAC claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first ("performance") prong of the *Strickland* standard, a movant must demonstrate that "counsel's representation fell below an objective

8

standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. Although not insurmountable, this standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *See id.* at 689. Under the second ("prejudice") prong of the *Strickland* standard, a movant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *See id.* at 694; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). In the context of a guilty plea, a movant satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Missouri v. Frye*, 566 U.S. 134, 148 (2012); *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

A court can choose to address the prejudice prong before the deficient performance prong, and also can reject an IAC claim solely on the ground the movant did not satisfy one of the prongs. *See Strickland*, 466 U.S. at 697-98 ("[T]here is no reason for a court deciding an ineffective assistance of counsel claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one."). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *Id.* at 689.

## III.    DISCUSSION

### A. Procedural Default

Movant has some procedural hurdles to overcome.

As stated above, a claim that was not raised on direct appeal before being raised in a § 2255 motion is procedurally defaulted unless the movant can show cause and actual prejudice or that he is actually innocent. *See Bousley*, 523 U.S. at 622-23. However, a movant's failure to raise an IAC claim on direct appeal does not bar that claim from being brought in a later, appropriate § 2255

9

proceeding. *See Massaro v. United States*, 538 U.S. 500, 509 (2003). The only issue raised on direct appeal related to sentencing. No issue related to sentencing is raised in the § 2255 Motion. Other than his IAC claims, Movant has procedurally defaulted any claim that could have been raised on direct appeal. Consequently, for all the claims Movant raised, other than IAC, Movant must show cause and actual prejudice, or that he is actually innocent, to overcome the procedural default. Movant cannot show cause and actual prejudice, and he cannot show actual innocence. Thus, all Movant's claims other than ineffective assistance of counsel are procedurally defaulted. In addition to being procedurally defaulted, Movant has forfeited all claims relating to the deprivation of constitutional rights that occurred prior to the entry of his guilty plea. The Court will first address Movant's guilty plea, then his IAC claims, and then cause and prejudice and actual innocence.

### B. The Guilty Plea

In connection with his motion to withdraw guilty plea, Movant said he pled guilty because he was "confused." (D.I. 110 at 10; *see* D.I. 147 at 5) It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that create a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Here, the transcript of Movant's plea colloquy contains his clear and explicit statements that: (1) he was not under the influence of alcohol, medication or narcotic drugs (D.I. 85 at 5); (2) he was satisfied with the advice from his attorney in relation to the plea agreement (*Id.* at 6); (3) he had reviewed the plea agreement with defense counsel and thought he understood it (*Id.* at 7); (4) he had some concerns about the plea agreement, which he discussed privately with his attorney for about eight

minutes[4] (*Id.* at 12) and which were then discussed in open court (*Id.* at 12-18); (5) he had not been threatened or forced to enter a guilty plea (*Id.* at 18-19); (6) he understood he had a right to a jury trial and associated trial rights (*Id.* at 30-31); (7) that Movant "knowingly received" child pornography if it were in a JPEG picture sent by Facebook Messenger, but he did not open it (*Id.* at 32-33, 34-35, 40-41); and (8) he admitted his guilt to the charge (*Id.* at 47). Movant also admitted the factual basis for the plea orally and in writing. The victim was a minor (and he knew that) (*Id.* at 36) who sent him "something explicit" (*Id.* at 38) on November 14, 2015 (*Id.* at 39). Movant wasn't sure that he had opened the JPEG picture and thus that he had knowingly received it. After a half-hour recess (*Id.* at 43), Movant admitted to receiving different child pornography sent by Facebook Messenger on November 14, 2015 – a video of the minor committing a sexual act – and that he "saw it in my – on my end and then I opened it." (*Id.* at 45).

The transcript of the guilty plea refutes any notion that Movant was confused during the guilty plea. He was certain in his acknowledgement of guilt that he had received both pieces of child pornography on November 14, 2015, and only questioned whether he had ever opened the picture. He had no similar concern about whether he had opened and viewed the video.

In the § 2255 Motion and his various memoranda, Movant does not now allege that there was any procedural error in the Rule 11 proceeding or that his guilty plea was not knowing and voluntary.

---

[4]     Those concerns were about not being able to pay a $250,000 fine, about restitution, about the interplay of the mandatory minimum and the sentencing guideline range, and about what would happen to his two cell phones if the Third Circuit reversed the case on one of the two issues he had reserved for an appeal. (D.I. 85 at 12-18). Movant's concerns were resolved, and none of them have any relation to the issues he is raising in the § 2255 Motion.

### C. Claims 1, 10, 11, and 12:  IAC and *Brady* Claims

Movant contends that Attorneys Huff, Levin and Caglia all provided ineffective assistance. The essence of those claims revolves around alleged *Brady*[5] violations involving chat threads extracted from Movant's phone and prison admission records.[6]  Movant alleges that the Government suppressed the chat threads, which provided impeachment and exculpatory evidence that the child pornography was sent to him by the victim's jilted lover ("Mr. Nalasa") in May 2016. He further alleges that the Government suppressed the prison record, which by indicating he was admitted at 10:20 p.m., allegedly proved the existence of an un-Mirandized custodial interrogation. Movant's *Brady* claims fail for multiple reasons,[7] and therefore so do his IAC claims.

The Supreme Court has held that "the Constitution does not require the Government to disclose material *impeachment* evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002) (emphasis added).  Movant asserts that some of his alleged *Brady* material is impeachment evidence.  Pursuant to *Ruiz*, therefore, those claims fail.

*Ruiz*, however, did not address whether the same is also true for *exculpatory* evidence, and the circuits are divided or undecided on that question. *See, e.g., Miller v. Gettel*, No. 22-1034, 2023 WL 2945340, at *7 n.5 (6th Cir. Apr. 14, 2023) (citing and noting different decisions in circuit cases); *United States v. Nichols*, No. 1:21-CR-00117-RCL, 2023 WL 6809937, at *4

---

[5]  When I say *Brady* material, I am including *Giglio* material. *See Giglio v. United States*, 405 U.S. 150 (1972).

[6]  Movant arguably raises a third ground for a *Brady* violation – that Special Agent Thomas was a liar, evidence was fabricated, the prosecutors were in on it, and thus the prosecutors violated their duty to disclose this favorable evidence – but that ground does not merit discussion, although many of those issues are reviewed in other contexts in the Court's Opinion.

[7]  Movant's freestanding *Brady* claims are arguably procedurally defaulted.  Nevertheless, as the claims are intertwined with the IAC claims and nonetheless fail, the Court addresses the merits of those claims.

(D.D.C. Oct. 16, 2023) (same). The issue remains an open question in the Third Circuit. *See United States v. Brown*, 250 F.3d 811, 816 n.1 (3d Cir. 2001) (assuming, prior to *Ruiz*, "for the sake of argument, [without so holding], that *Brady* may require the government to turn over exculpatory information prior to entry of a guilty plea"); *Jones v. United States*, No. CV 14-4655 (RBK), 2017 WL 4235736, at *5 (D.N.J. Sept. 25, 2017) (stating issue remains open question in Third Circuit). To the extent Movant's *Brady* claims involving exculpatory evidence are not precluded by his guilty plea, they nonetheless fail.

First, the Court notes that Movant admittedly had possession of the chat threads. Movant confirmed this in his filings and at his sentencing. (D.I. 202 at 12; D.I. 183 at 22-25) Movant acquired his backups of the chat thread in January 2019 (D.I. 202 at 12) and did not plead guilty until February 2020. There is no *Brady* violation for information a defendant already has. *See United States v. Pelullo*, 399 F.3d 197, 213 (3d Cir. 2005).

Second, the information Movant claims was suppressed is not impeaching or exculpatory. As for the chat threads, Movant claims that they prove that he got some of the child pornography (specifically the video that he pled guilty to receiving) from Mr. Nalasa in May 2016. What Movant ignores in his argument is that even if he did receive the video from Mr. Nalasa in 2016, that fact does not disprove his receipt of the video from the victim on November 14, 2015. The claim that an additional person had sent the same child pornography to Movant is hardly exculpatory, and I have already ruled that way. (D.I. 147 at 3-4) Movant has never denied that the victim filmed herself committing sexual acts that she transmitted to him. The evidence was overwhelming that he opened the video and watched it. (*Id.* at 4-5). But even if he didn't open it and watch it, he still received it. (*Id.* at 4 n.2)

Movant also alleges the chat threads confirm his theory that he was the victim of a fraud – that the victim and her parents were using the victim to get money and goods from Movant – and that he and the victim wanted to marry. Neither theory offers an iota of a defense against the child pornography charge. Nor do they assist as a defense to the travel to have sex with a minor charges. Accordingly, the Court again finds that the chat threads do not offer any exculpatory information.

Movant's other *Brady* argument relates to his prison admission record.[8] Movant argues that the timeline of events on July 17, 2018, cannot be right because a document shows Movant being admitted to the state prison in Wilmington, sometimes referred to as "Gander Hill" or "Howard R. Young Correctional Institution," at 10:20 p.m. (D.I. 186 at 7; D.I. 202 at 16-19; *see also* D.I. 201 at 15 n.5) Movant's videotaped interview at the Milford Police Department ended at 7:37 p.m. (D.I. 186 at 7; D.I. 201 at 16) Milford is about 70 miles from Wilmington. Movant argues that something is wrong because it should have taken no more than an hour and sixteen minutes to transport him from the Milford Police station to Wilmington. Ergo, the time on the videotape was tampered with to cover up extended non-Mirandized interrogation of Movant. Movant points to no testimony of any officer that they left the Milford Police station at 7:37 p.m. or when they left.[9] The fact that the videotaped interview ended at 7:37 p.m. and Movant was

---

[8] The record is unclear when the Government produced the "admission record." The Court has been unable to locate the document in the record; however, the parties to not appear to dispute the content of the document, which the Court was able to discern from the pleadings. Assuming that it was produced after the suppression hearing, there is no reason even now to believe that it is evidence helpful to the Movant. Its assumed lack of timely production does not begin to state a *Brady* violation. I note that at the suppression hearing Movant did not state anything about what happened after the videotaped interview concluded or when he arrived at Wilmington. (*See generally* D.I. 67 at 69-99).

[9] I note that there are any number of reasonable explanations for the time difference. For example, labelling evidence, completing reports, or getting some food could all have delayed departure. They could also have been delayed en route by traffic. As the Government points out (D.I. 201 at 17), the admission time may not be the same time as when they arrived at the prison.

admitted to Gander Hill at 10:20 p.m. does not contradict any testimony and does nothing to support Movant's otherwise unsupported assertion that the videotape was tampered with. The admission record is also irrelevant to show any lapsed time after his interrogation because he argues that his alleged un-Mirandized interrogation took place *before* his recorded interview at the police station; therefore, any alleged lapse in time *after* he was Mirandized is irrelevant. Therefore, the Court finds that the prison records do not offer any exculpatory information.

Third, there is no evidence that any of this information was suppressed. In its Declaration, the Government confirms the entire metadata extractions of the cellular telephone were provided to the defense. (D.I. 206-1 at 3 ¶ 5) The Government cannot say definitively if the specific chats Movant references are part of the extraction (as the extraction software does not always retrieve 100% of the data on an electronic device), as that would require "manual review of potentially tens of thousands of pages of data for information that is in a foreign language." (*Id.* at 4, ¶ 9) Nonetheless, if the chats were extracted, they were provided. (D.I. 206-1 at 3 ¶ 5; D.I. 183 at 5, 8-9)

For the foregoing reasons, the Court concludes that Movant's *Brady* claims have no merit and, therefore so do any allegations of IAC for allegedly failing to pursue or investigate these claims. An attorney does not provide ineffective assistance by failing to raise meritless objections or file meritless motions. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir.1999).

In his Motion, Movant only raised IAC against Attorney Caglia. In his Memorandum, however, he included IAC claims against Attorneys Huff and Levin. (D.I. 186 at 3; D.I. 202 at 47-52) Movant contends that defense counsel Caglia rendered ineffective assistance by failing to pursue investigation and argument about evidence "not on the record" and "on the record." (D.I. 186 at 3; 6-8) Movant describes the relevant ineffectiveness as not investigating or filing

15

motions concerning the Government's putative *Brady* violations in fabricating evidence in connection with the suppression hearing or in not disclosing that Mr. Nalasa had sent him the relevant child pornography. (*Id.* at 6-8) By the time Mr. Caglia represented Movant, the motion to suppress had already been filed, heard, and denied. Movant had pleaded guilty, and his motion to withdraw his guilty plea had been denied. It is highly doubtful that any reasonable attorney would have undertaken to attempt to relitigate the suppression motion and the motion to withdraw guilty plea given that they had already been litigated and denied. (D.I. 205, ¶ 4) There was then no evidence other than Movant's say-so that any evidence had been fabricated in connection with the suppression motion. The claim that an additional person had sent the same child pornography to Movant was hardly exculpatory, and I had already ruled that way. (D.I. 147 at 3-4) Movant has never denied that the victim filmed herself committing sexual acts that she transmitted to him. The evidence was overwhelming that he opened it and watched it. (*Id.* at 4-5) But even if he didn't open it and watch it, he still received it. (*Id.* at 4 n.2) No reasonable attorney would consider that filing a motion with the theory that Mr. Nalasa sent him the child pornography, given that I had already considered and rejected that assertion, as being an indication of Movant's innocence. Mr. Caglia's refusal to pursue the fabrication and third-party sender theories was not representation that fell below an objective standard of reasonableness. Further, neither the fabrication nor the third-party sender theories had any probability of changing the outcome of the case nor is there a reasonable probability that but for counsel's alleged errors, Movant would have insisted on proceeding to trial instead of pleading guilty. The claim of ineffective assistance of counsel by Caglia fails. For the reasons set forth, the Court concludes that the IAC claims do not warrant relief and do not provide a basis for challenging anything that occurred before the guilty plea.

Movant generally alleges ineffective assistance of counsel against Huff and Levin.  In his Declaration, Attorney Huff states that he received the cell phone extraction from the Government; that the extractions were discussed with Movant prior to his plea; that five days before the plea hearing Movant provided him with 167 pages of chat messages that Movant had for over a year; that, after Movant pleaded guilty, he retained a translator to have the chat thread provided by Movant translated; that, after Movant pleaded guilty, he had a computer forensics expert to try to determine if the video came from Mr. Nalasa (but he could not confirm that); and that, although none of this information proved Mr. Nalasa sent the pornographic video, he, upon Movant's request, filed a motion to withdraw the guilty plea based on Movant's theories.  (D.I. 207)  In his Affidavit, Attorney Levin indicates he was appointed for sentencing after Movant pleaded guilty; upon request, filed a second motion[10] to withdraw Movant's guilty plea even though he advised Movant that he did not think he had grounds for it; had numerous conferences with Movant; and made all credible arguments on his behalf that he could make.  (D.I. 208)  Although counsel was under no duty to file meritless motions, Attorneys Huff and Levine did upon Movant's request. Upon review of the record, the Court concludes Movant has failed to demonstrate that either Attorney Huff or Levin's representation fell below an objective standard of reasonableness.

Additionally, the allegations do not suggest that the supposed failures resulted in prejudice to satisfy *Strickland*'s second prong.  Movant criticizes counsel for not discussing the English translations of text messages.  (D.I. 202 at 49).  Movant faults Huff for not following up on a chat thread between Movant and the victim's sister.  (D.I. 202 at 19 (explaining what EGRT is), 49 (asserting that Movant had the thread on January 31, 2019, and that counsel did nothing with it)).

---

[10]    The docket references this motion as a "first" motion, but in fact Mr. Huff had filed an earlier motion.  (D.I. 89)

17

How the chat thread would have helped Movant defend against the charges is a mystery.[11]  Counsel may have a duty to investigate, but counsel does not have a duty to comply with a client's request for irrelevant investigation.  *See Strickland*, 466 U.S. at 691 (stating counsel's judgment given "heavy measure of deference" when determining if decision not to investigate was reasonable); *Berryman v. Morton*, 100 F.3d 1089, 1101 (3d Cir. 1996) (providing "attorney need not fully investigate every potential avenue if he or she has reasonable grounds for not doing so").  Even if there were a duty to investigate, Movant cannot show that there is a reasonable probability that, but for counsel's conduct, the result of the proceeding would have been different, particularly that there is a reasonable probability that Movant would have insisted on proceeding to trial instead of pleading guilty.

For the foregoing reasons, the Court denies Claims 1, 10, 11, and 12.

### D.  Procedurally Defaulted Issues

Movant has not explicitly asserted any cause for his procedural default of his claims, nor does the Court discern any.  To the extent Movant's assertions of IAC and prosecutorial misconduct can be construed as attempts to establish cause, those allegations fail to do so as they are meritless.  Movant also cannot establish prejudice because, as explained further below, his claims are without merit.  Any claim of prejudice also fails because the weight of evidence the Government had establishing Movant's guilt was overwhelming.

#### 1.  Claims 2 and 4:  The Search and Seizure Claims

In Claims 2 and 4, Movant alleges he was detained without probable cause and that the warrant authorizing the search and seizure of his car and electronic devices was defective.  The

---

[11]    Movant wanted his counsel to pursue the theory that he was the victim of a fraud and the theory that he and the victim wanted to marry.  As previously stated, neither theory offers a defense for the charges against Movant.

search and seizure claims are not cognizable in this proceeding. With one exception, they are all foreclosed by Movant's guilty plea. *See Porter*, 933 F.3d at 229 (providing criminal defendant who has pleaded guilty can no longer challenge admissibility of evidence obtained in violation of Fourth Amendment because conviction is based on "solemn and unconditional confession of guilt—not the constitutionality of the search that discovered" the evidence against him). The one exception is the denial of his motion to suppress statements. In his plea agreement, Movant reserved the right to take an appeal of my denial of that motion. (D.I. 71, ¶ 10). On appeal, however, he did not raise the issue. To raise that issue now, he would have to show "cause and prejudice" for failure to raise that on appeal. Movant does not attempt to do so. Even if he were to allege "cause and prejudice," he cannot show that there is any prejudice since his arguments are meritless.[12]

I note in addition that the search warrant obtained on July 13, 2018 contained probable cause for various child pornography offenses (D.I. 201-1), and the criminal complaint filed against Movant on July 18, 2018, contains probable cause for the offense it charged (travel with intent to engage in illicit sexual conduct) (D.I. 27). Contrary to Movant's allegations, the search warrant application did include an affidavit. (D.I. 201-1) Movant states that there was no probable cause to arrest him or to search his person or property (D.I. 186 at 3), but the documents refute that argument.[13]

Accordingly, the Court denies the Claims 2 and 4.

---

[12]    I do not imply that he could show cause; I simply think I do not need to decide that issue.
[13]    Movant states that probable cause was not discussed at the suppression hearing. True, but that is because it was not an issue raised by the suppression motion.

### 2.  Claim 3, 5, 6, 7, and 8:  False Evidence Claims

Claim 3 attempts to relitigate an issue raised in Movant's suppression hearing that he did not raise on direct appeal – that the Detail Call Service Report and the statement that Special Agent Thomas "verbally read" Movant his rights are "clear and convincing evidence" that he was subjected to an un-Mirandized interrogation before his Mirandized one.  (D.I. 186 at 5)  As explained in the Government's brief, however, Movant is taking Detective Maloney's testimony out of context.  Detective Maloney did not testify that he altered the document; he is simply explaining how the communication center updates his status in the Call Log when he radios in to communicate his activities, actions, or status.  (D.I. 67 at 7-9)

Movant next alleges that the statement that Special Agent Thomas "verbally read" his *Miranda* warnings conflicts with the statement that Detective Maloney did not see Special Agent Thomas with a piece of paper with the *Miranda* warnings on it.  (D.I. 186 at 5)  Again, Movant is simply taking out of context that Special Agent Thomas verbally stated the *Miranda* warnings. The testimony did not literally mean that the *Miranda* warnings were read off a paper.  (D.I. 67 at 14-16, 27-28, 35, 50)  It was not until Movant's interview at the police station that he was provided with written *Miranda* warnings.  (D.I. 67 at 53)  I have already considered this matter and the credibility of the witnesses, and the record shows there is no merit to Movant's arguments.[14] (D.I. 66)

Claims 5 through 8 rely on Movant's previous allegations in Claims 2, 3 and 4, to assert that his suppression hearing (Claim 5), criminal complaint (Claim 6), confession (Claim 7) and arrest and detention (Claim 8) violated his Due Process rights because of the alleged false evidence

---

[14]  Movant also alleges that the prison admission record supports the claim of un-Mirandized interrogation.  The argument regarding the prison records, however, has already been rejected in Section III.C.

and testimony and un-Mirandized interrogation. As previously discussed, those allegations are without merit and so are Claims 5 through 8.

Accordingly, the Court denies Claims 3, 5, 6, 7, and 8.

### 3.  Claim 9:  Defective Indictment

Movant states the indictment was defective. (D.I. 202 at 45-47). Movant made three arguments in his motion to withdraw the guilty plea; I denied all three. (D.I. 147 at 8-12). He now makes a fourth. It is that essentially that the indictment was not specific enough in regard to the count to which he pleaded guilty when the indictment used the term "visual depiction." (D.I. 202 at 46) The indictment tracked the statutory language. That was enough. *See United States v. Willis*, 844 F.3d 155, 161–62 (3d Cir. 2016) (providing "no greater specificity than the statutory language is required" in indictment if facts provided are sufficient to permit defendant to prepare defense). Movant also raises the issue that the indictment's inclusion of "attempted" receipt of child pornography was an improper alteration of 18 U.S.C. § 2252(a)(2). (D.I. 186 at 6) Movant ignores that fact that the indictment also charged him with a violation of 18 U.S.C. § 2252(b)(1), which explicitly criminalizes "attempts" to violate 18 U.S.C. § 2252(a)(2). Movant's arguments are frivolous. Further, any minor defects in the indictment, if there were any, would not be cognizable in light of the guilty plea. *See Tollett*, 411 U.S. at 267; *see also Willis*, 844 F.3d at 162 (stating indictment should be upheld "unless it is so defective that it does not, by any reasonable construction, charge an offense"); *United States v. Schweitzer*, 454 F.3d 197, 205 (3d Cir. 2006) (holding guilty plea forfeited challenge to indictment that did not rise to level of failing to state an offense).

For the foregoing reasons, the Court denies Claim 9.

### 4. Claim 13: Actual Innocence

Movant claims a miscarriage of justice because he is actually innocent. He raised this argument in his motion to withdraw guilty plea. He makes essentially the same claim now that he did in the motion to withdraw guilty plea. Here's what I have already said about "actual innocence" after holding a two-day hearing.

> Defendant's guilty plea was originally predicated on the fact that Defendant knowingly received a sexually explicit picture from the victim via Facebook Messenger. (*See* D.I. 73). At the Rule 11 change of plea hearing, however, Defendant questioned whether he knowingly received the picture because he did not open it. (D.I. 85 at 40:2–22). After taking a thirty-minute recess to review the evidence, the parties amended Attachment B (the statement of facts establishing guilt) to instead provide that Defendant knowingly received a sexually explicit video. (*Id.* at 43, 44:9–25). Defendant signed amended Attachment B. (D.I. 73; D.I. 85 at 46:22–24). Defendant's lawyer, Mr. Huff, told the Court, "[I]t was actually in [sic] my client's suggestion that we change this language to cover a video that was sent as opposed to images." (D.I. 85 at 45:13–15). Defendant confirmed that he received and opened the video, and that he was guilty. (*Id.* at 45:16–25, 47:4–7).

> Defendant now contends, "[H]e never downloaded, opened, viewed or played the video sent by the victim on November 14, 2015." (D.I. 110 at 8). He argues that at the hearing, "he was unsure whether or not he had actually viewed the video. Since the guilty plea, however, he now remembers that he had not viewed the video on November 14, 2015." (*Id.*). Defendant asserts that he instead knew the contents of the video because (1) he received the video from [Mr.] Nalasa in May 2016 (*id.*; D.I. 145 at 22:20–23:10 (testimony of Mr. Huff); D.I. 146 at 306:20–307:11 (testimony of Defendant)), and (2) the victim told him the contents of the video she was sending in a telephone conversation. (D.I. 110 at 9–10).

> Defendant has not produced any credible evidence to support his current claims. *See Brown*, 250 F.3d at 818 ("Assertions of innocence must be buttressed by facts in the record that support a claimed defense." (citation omitted)). Instead, the evidence directly contradicts Defendant's assertion of innocence. The victim sent Defendant the sexually explicit video through Facebook Messenger on November 14, 2015. After receiving this video, Defendant messaged the victim and mentioned specific details from the video indicating that he had opened and watched the video. For example, Defendant told the victim to use a smaller bottle and asked her why she was wearing a shirt in the video. (*See* D.I. 145 at 205:11–208:2 (testimony of Special Agent Downey)). These messages overwhelmingly support a finding that Defendant knowingly received this video on November 14, 2015.

Defendant's assertions of innocence also contradict his statements at the Rule 11 hearing. After the parties amended Attachment B, Defendant raised no objection to the Government's recitation of the facts, and he admitted to knowingly receiving and opening the video. (D.I. 85 at 44:9–46:24). He did not make any indication that he was "unsure" about whether he opened the video. Defendant fails to credibly "explain why his position has changed so markedly" since the hearing. *Jones*, 336 F.3d at 253. Thus, I conclude that Defendant has not met his burden to make a credible showing of innocence.

(D.I. 147 at 3-5) (footnotes omitted).

Movant's current assertion of innocence is essentially the same as the one he already made and that I rejected. It is simply contradicted by the record in the case. Movant's claims that he was confused cannot overcome his statements under oath at the guilty plea hearing that he received the child pornography video from the victim. Movant is not a person who is easily confused. Movant stated, "The victim sent [the video child pornography], and then I saw it in my – on my end and then I opened it." (D.I. 85 at 45) As I noted after taking the guilty plea, Movant is "very knowledgeable about what the evidence is in the case and asks very subtle questions about the evidence." (D.I. 85 at 47) Movant has not alleged anything that provides a basis for finding that his guilty plea was not knowing, voluntary, and supported by a solid basis in fact.

The United States Supreme Court has not recognized 'actual innocence' as a freestanding, cognizable claim for relief. *See Marcy v. Superintendent Phoenix SCI*, 110 F.4th 210, 219 n.20 (3d Cir. 2024). It has said, however, that the movant's burden on any such claim "would necessarily be extraordinarily high." *See Herrera v. Collins*, 506 U.S. 390, 417 (1993); *see also Marcy*, 110 F.4th at 219 n.20 (stating burden so high that no petitioner in Third Circuit or Supreme Court has ever met it); *Reeves v. Fayette SCI*, 897 F.3d 154, 160 n.4 (3d Cir. 2018) (describing hypothetical freestanding actual-innocence claim as "more demanding" than that applied to gateway actual-innocence claims in procedural-default context).

23

Actual innocence can provide a means to overcome the procedural default of claims. *See Bousley*, 523 U.S. at 622-23. Under the actual innocence exception, a defendant who failed to raise a cognizable § 2255 claim in his direct appeal may nevertheless raise the issue collaterally if the alleged error "has probably resulted in the conviction of one who is actually innocent." *See Murray v. Carrier*, 477 U.S. 478, 496 (1986). To prevail on a claim of "actual innocence," the defendant must persuade the court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

For the reasons states above, the Court concludes that, to the extent Claim 9 is an attempt to overcome his procedural default, Movant's gateway actual-innocence claim fails. Therefore, any freestanding actual-innocence claim, even if cognizable, is also without merit. Accordingly, the Court denies Claim 9.

### 5. Claims 14 and 15

Claim 14 alleges prosecutorial misconduct based on Claims 2 through 13. Claim 15 alleges fraud and deliberate deception on the Court based on Claims 2 through 14. Claims 2 through 13 have all been denied. Accordingly, Movant's attempts to collectively combine those claims also fails and the Court denies Claims 14 and 15.

## IV.   EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if "the motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255(b); *see also United States v. Dobbin*, --- F.4th ----, 2025 WL 2302431 at *4 (3d Cir. 2025); *United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); Rule 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. If the record conclusively negates the factual predicate asserted in support of a § 2255 motion, or if the movant would not be entitled to relief as a matter of law even if the factual

predicates as alleged in the motion are true, an evidentiary hearing is not required. *See Gov't of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985). I find no need for an evidentiary hearing here because, as previously discussed, the record conclusively establishes that Movant is not entitled to relief under § 2255.

## V.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability ("COA"). See Rule 11 of the Rules Governing Section 2255 Proceedings; 3d Cir. L.A.R. 22.2 (2011). A COA is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make that showing, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Additionally, when a habeas petition is denied on procedural grounds, a movant must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See id.* The Court is denying Movant's § 2255 Motion as procedurally barred in part and meritless in part. Reasonable jurists would not find the Court's assessment debatable or wrong. Therefore, the Court will not issue a certificate of appealability.

## VI.    CONCLUSION

For the reasons discussed, the Court denies the instant § 2255 Motion without holding an evidentiary hearing or issuing a certificate of appealability. An appropriate Order will be entered.